NO. 8315

COURT OF APPEAL

PARISH OF ORLEANS

8315 AUTOMOBILE FINANCE & SECURITIES COMPANY

VERSUS

JAVIER FIGUEROA M. AND ALLEN SALES COMPANY.

Court of Appeal
PARISH OF ORLEANS
June 30, 22

658  8315

Dinkelspiel; J.

Plaintiff institutes this suit against the defendants alleging that the Allen Salee Company is a legal copartnership composed of Theodore Grank and F. J. Weinberger, and that they are indebted to plaintiff in the full sum of Fifteen Hundred and Twenty Five and 04/100 ($1525.04) Dollars, with interest at the rate of eight per cent from maturity until paid, together with attorney's fees of fifteen per cent on said principal and interest; and alleging further that plaintiff is the holder and owner for a valuable consideration and before maturity of eleven promisory notes made and subscribed by Javier Figueroa M. and endorsed by the Allen Sales Company; describing said notes, under an act of chattel mortgage, paraphed "Ne Varietur"; mortgage passed before Betrand I. Cahn, a Notary Public for the Parish of Orleans on September 11th, 1919, mortgaging to plaintiff a certain Seven passenger Oole touring car No. 50740, to secure the sum of $1663.69, money loaned and advanced by plaintiff to defendant in partial representation of which said indebtedness the aforesaid eleven notes were given plaintiff by defendant; the notes and copy of the act of mortgage are annexed to the petition. They further allege that all the notes in suit are past due and unpaid and under the act of mortgage and confession of judgment, the property described may be seized and sold by executory process for cash and without appraisement, and in case of suit the defendants promised to pay the fees of the attorney employed for that purpose, which fees were fixed at fifteen per cent. Plaintiff further avers that all said promisory notes are endorsed by the Allen Sales Company, composed of Theodore Frank and F. J. Weinberger, who are indebted in solido for the full amount of this claim, principal, interest and attorney's fees and pray for judgment for the amount claimed to be due in their petition.

The defendant, Javier Figueroa, M. did not answer or make any appearance in this case, but the Allen Sales Company and the individual members of said firm, Theodore Frank and F. J. Weinberger, answered, admitting that they were the same copartners composing the Allsmmxxfx Allen Sales Company, they executed the note in question, but deny they are indebted to plaintiff in the sum of $1525.04 or any other sum whatsoever on the note sued on; admit further that plaintiff is the holder and owner before maturity and for a valuable consideration of the notes in question, and that said notes are identified with the chattel mortgage herein granted on a Cole Touring Car, herein described. Further answering defendants admit the encroachment on the notes herein sued on but deny that they or either of them are in any way indebted to plaintiff, because plaintiff's corporation was engaged at the time of their acquisition of the notes herein sued on, in the business of discounting and handling, buying and selling notes and other commercial papers secured by Chattel mortgages on automobiles; and averring further that plaintiff corporation advertised and solicited the business of various automobile dealers for the handling or discounting of their chattel mortgage notes and that the business of defendants was solicited, both by letter and in person by the plaintiff corporation through its respective officers and agents. And averring that in connection with its efforts to secure and obtain business as aforesaid, the said plaintiff printed and circulated for the information and use of the public xxxxxxx certain advertising matter and schedule of charges. That they charged defendants with the premiums of insurance xxx thus giving to defendant absolute security in case of any loss. And further answering over that the automobile theretofore described in the petition and the not of mortgage had been wrongfully converted by Javier Figueroa M., the purchaser and maker of the notes and the mortgagor of the said car; and that as soon as defendants were advised of the said

660

wrongful act of conversion they immediately notified plaintiff
and plaintiff through its agent and representative accepted no-
tice and informed defendants they were protected by reason of
the insurance, and subsequently for reasons unknown to defendants
demand was made upon them for payment of these notes, which de-
mand was refused and plaintiff denied there was any insurance on
said car covering said wrongful conversion. And further answer-
ing allege that they paid to defxndx plaintiff, the premium charged
by it for wrongful conversion insurance on said car, and that the
policy covering said car is or should be in the possession and
under the control of plaintiff, as all other policies on said
car issued at the time and paid for in the same way and at the
same time by defendant. That plaintiff is legally indebted to
and can or should have demanded a recovery from the Insurance
Company the amount of the policy collectible under the wrong-
ful conversion policy, and if it has failed or neglected so to
do, it was solely at fault and its laches has relieved and re-
leased defendants herein from any responsibility on the said
notes.xfxikxxx Hence prays for judgmm judgment in their favor.
                                    defendants
         Subsequently/plaintiff avers in a supplemental and
          answer
amended/petition that the notes sued on were materially al-
tered without the consent of defendants herein, without their
knowledge or authority, and that they have never assented there-
to, and that said material alteration was made subsequent to
the endorsement thereof by defendants, and after delivery of
the said notes herein sued on, and therefore for that reason
defendants are not responsible. Copies of the notes are an-
nexed to the petition and are offered in evidence, together
with certified copy of chattel mortgage executed before Bet-
trand I. Cahn, on September 11th, 1919, and after offering
the notes and mortgage, plaintiff rested their case.

         The first witness offered by the defendant in this
case is G. Owen Vincent, and he was called on cross-examina-
tion, and after stating that he had been President of Plain-
tiff corporation since its organization and actually in charge
of its affairs, then followed:

661

Q. The company issued a prospectus and other printed matter in connection with its campaign for the sale of its stock and for the obtaining of business?

A. Yes, sir.

At this stage of the proceedings, counsel for plaintiff made the following objection:

"I want to make this objection at the outset, so that it can apply throughout. We object to any testimony for the purpose of varying the written contract of endorsement; and we would like to have the same objection apply to all testimony."

By the Court:

"I will let the objection go to the effect, with the reservation of the objection."

We are convinced that the ruling of the Judge was an error.

Under the Negotiable Instrument Act of the Legislature of 1904, being Act No. 64; Sec. 63:

"A person who indorsed a note in blank before its delivery to the xxxxxx payee is bound as endorser and parole evidence is not admissible to prove that he signed the note as surety."

In the case of Neosho Milling Co. vs. Farmers Co-op. Warehouse Stock Co. et al, found in the 130 La. Rep. at page 950, the case in question was one where the Court of Appeal asked for the interpretation of the Negotiable Instrument Law in reference to whether or not a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an endorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity.

The Court of Appeal propounded this question to the Supreme Court:

"Does the act just referred to establish a conclusive presumption that a person not a maker, drawer, or acceptor, who places his signature on a note or bill, is an endorser unless he clearly indicates by appropriate words

662

his intention to be bound in some other capacity?  Or does it merely establish a presumption to that effect, which may be rebutted by the evidence of the consent and intention of the person to be bound in another capacity?"

The Supreme Court goes on to answer the question as follows:

"The law deems such a person to be an endorser, unless by appropriate words he indicates an intention to be bound in some other capacity. If no such words appear between the four corners of the instrument, such a person is deemed to be an endorser. In other words, the lawmaker's intent is that the question of the capacity of a person, whose signature appears in a bill or note, is to be determined by the words of the instrument. The act of 1904 settled in this state a number of questions, on which there was a great conflict of judicial opinion throughout the states of the Union, and, among them, the status of irregular, or anomalous, endorsers of commercial paper. A person, not a party to the paper, as maker, payee, or holder, who placed his name on the back of the note at its inception, had been variously held to be an endorser, maker, surety, or guarantor. 7 Cyc. 664 et seq. In New York such person was held as an endorser; in Massachusetts, as maker; in Louisiana, as surety for the maker; and in some other states, as a joint maker to the payee. Id. The Act of 1904 followed the New York rule, and the certainty, so desirable in the matter of commercial paper, would be destroyed if the capacities of the parties as they appear on the instrument could be changed by parol evidence. The rule as laid down in the Act of 1904 is very plain and simple, and where the law makes no exception the court can make none.

We therefore answer the first question in the affirmative, and the second in the negative."

In Corpus Juris, No. 8, Sec. 122, p. paragraph 75:

A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser, unless he clearly indicates by appropriate words his intention

663

to be bound in some other capacity.

Citing numerous authorities under Sections A and B that same paragraph.

So that we hold under the Negotiable Instrument Act and under the decisions referred to, if defendants at the time of signing their names to the note had then made any exceptions by reason of the signatures, the evidence might under such circumstances have been available to the defendants in this case, but not having done this, under the law and the decisions, this testimony is untenable.

Therefore, the objection to all the testimony made should have been maintained.

The only other question for determination is where the place of payment of a note is left blank, the holder has the right to fill in a convenient place? We answer this in the affirmative. The Negotiable Instrument Law expressly provides that "where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein." Also see Corpus Juris, Bills and Notes, Paragraph 313, page 182, and paragraph 315, page 185.

For the reasons assigned it is ordered, adjudged and decreed that the judgment of the lower Court in this case be and the same is hereby annulled, reversed and avoided, and that there may now be judgment in favor of the Automobile Finance & Securities Company against the Allen Sales Company, a legal firm composed of Theodore Frank and F. J. Weinberger, individually and in solido, in the full sum of $1535.04, with interest at the rate of eight per cent from maturity of the obligation until paid, together with attorney's fees of fifteen per cent on principal, and interest, and for costs of both courts.

—Judgment reversed and rendered—